NICHOLES, J.
Philip P. Herwig died in New Orleans on January 31, 1907. He had been twice married. His legal heirs were Augustus Charles Herwig and Ernest Charles Louis Herwig, his sons by his first marriage, and Rosemonde Elizabeth Herwig (wife of Emile Runtz), his daughter by his second marriage. He left an olographic will by which he appointed Martin H. Sullivan and Albert G. Phelps joint executors of his will, with full seisin of his entire estate, real and personal, without bond, with full power to take possession of all of his property and rights of every description. The will was probated and ordered to be executed. Sullivan and Phelps qualified as executors, and letters as such issued to them as such. At Herwig’s death seals were affixed to his effects. An inventory of the property of the succession was ordered to be made. On their petition an order was made that an inventory of the property of the succession should be made by Andrew Hero, Jr., notary public. While that inventory was being made, Mrs. Rosemonde Herwig, wife of Emile Runtz, on April 29, .1907, filed a rule on Martin H. Sullivan to show cause—
“why ten series of premium bonds then in his possession should not be included in the inventory of the property of the estate, and why an order should not issue to Andrew Hero, Jr., notary public, to include the same in the inventory which he had been ordered to make.”
On January 20, 1908, Sullivan, defendant in the rule, answered, averring: That the ten full series of premium notes referred to in the rule, together with 440 shares of the capital stock of the State National Bank, 325 shares of the capital stock of the Whitney Central National Bank, and 325 shares of liquidator’s certificates of the Germania National Bank were sold to respondent on or about the 5th day of June, 1906, for the price and sum of $300,416.67.
That at the time the said sale was made the shares of bank stock herein referred to were transferred to respondent’s name on the books of the respective banks, and the 10 full series of premium bonds hereinabove referred to were actually delivered into respondent’s hands at the office of the president of the Hibernia Bank & Trust Company, in the city of New Orleans, by the proper authorities representing the succession of Joseph L. Herwig.
That after said sale had been made, concluded, and fully consummated, your respondent, at the earnest solicitation of the said P. E. Herwig, agreed with the said P. F. Herwig that your respondent would sell on demand to the said Philip Felix Herwig, at either party’s option, the 10 full series of premium bonds, and one-half of the bank stock, upon payment to respondent of the total sum of $163,006.67, with interest from the date of the original sale, at the same rate of interest which was to be charged respondent by the Hibernia Bank & Trust Company for that portion of the money with which respondent purchased said securities which respondent borrowed from said bank.
That pursuant to said agreement, which was entered into one or two days after the original sale, respondent and the said Philip Felix Herwig entered into so-called time contracts to cover the above agreement, and in further assurance of said time contracts, and as a part thereof, the said Philip Felix Her- *67 wig, executed and delivered to respondent a certain promissory note for the sum of $25,-291.67, dated New Orleans, June 5, 1906, payable on demand at - rate of interest from date; said note bearing upon its reverse an indorsement, made by the said Philip Felix Herwig, to the effect that the said note was—
“secured by 20,000 of premium bonds, which are also pledged to secure my time contracts of this date with- Mr. M. H. Sullivan, for State National Bank stock, Whitney Central National Bank stock, and Germania National Bank liquidator’s certificates.”
That thereafter the said bank stock and premium bonds began to decline and depreciate in value,-and the said Philip Felix Her-wig, being desperately ill and his affairs being involved in great confusion, notified respondent that he, the said Herwig, did not desire to exercise the option to purchase the said. securities, or any part of them. That the said Herwig did not have the ready money, and could not acquire the said money, to purchase the said securities, or to exercise his right of option under the said time contracts. That respondent assented to this, and thereupon it was agreed between respondent and the said P. F. Herwig that the said transaction should stand as it had originally stood in the form of an absolute sale and delivery -to respondent of the said shares of bank stock, liquidator’s certificates, and premium bonds, and that pursuant thereto respondent now owns the said securities.
For further answer and return to the said rule respondent shows: That the transaction as to the premium bonds and as to the said bank stocks was an entire and single transaction, and that the sale of the premium bonds to respondent was involved in and was a part of the entire sale of all of said securities to respondent at one time for the lump sum of $300,416.67.
That said sale and delivery was originally made and consummated in the presence of witnesses, and respondent shows that if the said time contracts could now be revived and enforced by the said Mrs. Kuntz, or any of the parties in interest, it would be to respondent’s interest at the present time to have the said time contracts revived and to have the said premium bond and one-half of the said bank stocks sold in the open market for cash. That the result thereof would inevitably cause the market to fall still lower, and the said 'securities would be sold at a ruinous sacrifice, and the succession of Philip-Felix Herwig would thereupon become indebted to respondent in the difference between the price of said bonds and bank stocks at forced sale and the price named in said time contracts.
In view of the premises, respondent prays judgment, and that he be quieted in the possession and ownership of the securities here-inabove mentioned, and for all general and equitable relief.
On trial of the rule, the court, on May 31, 1907, ordered that the rule of Mrs. Rose-monde Kuntz be made absolute to the extent of ordering the said bonds, now in the custody of Martin H. Sullivan, to be included in and placed on the inventory of this estate and appraised according to law, subject, however, to the pledge thereof to said Martin H. Sullivan to secure the note executed and the time contracts entered into by the deceased on the 5th of June, 1906.
This order was acquiesced in by Sullivan. On June 5, 1907, Martin H. Sullivan filed in court the following motion:
“On motion of Martin H. Sullivan, one of the joint executors of the succession of the late Philip Felix Herwig, and on suggesting to this honorable court that mover, on or about the.5th day of June, 1906, entered into three certain demand contracts with the late Philip Felix Herwig, whereby the said Herwig and mover agreed that the said Herwig should buy from mover and sell to said Herwig two hundred and twenty (220) shares of the capital stock' of the State National Bank of New Orleans, at four hundred dollars ($400) per share, deliverable at either party’s option, one hundred and sixty- *69 three (1G3) shares of the capital stock of the Whitney Central National Bank, at two hundred and eighty dollars ($280) per share, deliverable at either party’s option, and one hundred and sixty-three (103) shares of liquidators’ certificates of the Germania National Bank, at twenty-five dollars ($25) per share, deliverable at either party’s option.
“On further suggesting that mover is the holder and owner of a certain promissory note in the sum of twenty-five thousand two hundred and thirty-one 07/ioo dollars, payable on demand to the order of mover, made by the said late Philip Felix Herwig, of date June 5, 1906, bearing six per cent. (6%) interest per annum from date, secured by a pledge of ten (10) certain full series of premium bonds of the city of New Orleans, which were delivered to mover and are now in his possession.
“And on further suggesting that mover does not desire to carry said bank stocks for the account of the succession of Philip Felix Herwig, and that mover desires that said succession ■should exercise its right to take up said bank stock and relieve mover from any further responsibility in. the premises, and that mover desires payment of said demand note of $25,291.-67, with interest at six per cent, per annum <6%) from June 5, 1906.
“It is ordered by the court that Albert G. Phelps, joint testamentary executor of the succession of the late Philip Felix Herwig, Rose-monde E. Kuntz, wife of Emile Kuntz, and the ■said Emile Kuntz, her husband, to authorize her, Augustus Charles Herwig and Ernest Charles Louis Herwig, the last three named being forced heirs of the late Philip Felix Herwig, who are legatees under his will to the extent of their legitime, do show cause, if any they have or can, in open court, before the civil district court for the parish of Orleans, division C, on Friday, June 7, 1907, at 11 o’clock a. m., why the succession of Philip Felix Herwig should not exercise the right of thp said late Philip Felix Herwig, under the terms of the said demand contracts, to take up the said 220 shares of the State National Bank stock, 163 shares of the Whitney Centra] National Bank stock, and 163 shares of liquidators’ certificates of the Germania National Bank, at the price named in said demand contracts, and why said note of the late Philip Felix Herwig held by mover should not be paid, with interest at six per cent. (6%) per annum from its date, or, in the alternative, why the said shares of bank stock should not be ordered to be sold, for account of the succession of Philip Felix Herwig, according to the rules of the New Orleans Stock Exchange, and why the said ten (10) full series ■of premium bonds should not be sold according to the rules of the New Orleans Stock Exchange, and the proceeds thereof applied to the payment of said notes held by mover, and why mover’s lien and privilege as pledgee of said ten series of premium bonds to secure said demand contracts and said note should not be enforced .accordingly, and why all general and equitable relief should not be granted to mover.”
On June 14th Mrs. Rosemonde Herwig answered this rule. She denied all and singular the facts and allegations of said rule set forth. Further answering, she averred that she was not only one of the forced heirs of P. F. Herwig, as alleged, but also a creditor for a large sum, being for the share and interest of respondents in the estate of her late mother, the deceased Mrs. P. F. Herwig, as will appear by certain proceedings taken in this honorable court and cumulated with this succession, herein specially referred to.
Further answering, respondents say:
“First. That the instruments denominated in the rule ‘demand contracts’ were not and are not legal and valid contracts, binding upon either or both parties to said transaction, because they depended for their execution entirely on the will of either or both parties thereto, and gave no right of action to either in the event of the other’s refusal to comply therewith.
“That in addition to this feature the said contracts did not and do not create a valid or enforceable contract of sale, or a promise to sell, because no price was agreed upon, but the same was left open, vague, indeterminate, and uncertain.
“Second. That, whatever the nature of said alleged agreement may be construed to be, the said Herwig declined in the early part of the month of November, 1906, to take the stocks therein described, was no longer bound, if he ever was, in fact or law, bound thereby, which is denied.
“Third. That in so far as the rule seeks to establish or reserve any liability of the defendants for any loss, liability, or responsibility under the alleged pledge for the security thereof, the mover has no such recourse, because he suffered no loss or damage in the premises, and if it should appear that he did suffer any such loss it was caused by his own fault, failure, and neglect, for which this estate should not be made responsible.
“For further answer respondents say that, in so far as concerns the note of $25,291.60, they believe that an examination of the books and papers of the late P. F. Herwig would furnish important evidence in the defense thereof, but those books and papers are in the custody of the mover and his coexecutor, and it is impossible for these respondents to say what they contain, inasmuch as they have not been able to get possession of the same or to make the examination thereof that is essential in the premises.
“Respondents further say that the executor herein should not be permitted to force the collection of the said alleged debt until, by a showing properly made, the condition of this estate is developed, with an opportunity to respondents to *71 get into the papers and effects of decedent, which, judging by past discoveries in this matter, would materially injure the .mover’s case.
“Respondents further say that if, for any reason, the amount of said note is fixed by your honor as a debt of the estate, then it is clearly the duty of the court in ordering a sale to see that such sale is made in the most public manner and in such shape and way as will protect the interest of the heirs herein. That it has already been established in other rules herein that a sale in the manner suggested by the mover would be calamitous, and, considering the relations existing between the two executors, one of whom is a stock and note broker, with membership in the Stock Exchange, any sale on that floor would be bound to result in loss to the estate.
“In view of the premises, respondents pray that the rule herein taken may be discharged, and that there be judgment in respondents’ favor rejecting the mover’s demand, but if for any reason the premium bonds are ordered to be sold, then that such sale be made at public auction by an officer appointed by the court, after the usual advertisement, and that such orders may be made as will properly protect the rights of this estate in the premises; and respondents pray for all general and equitable relief.”
On trial of this rule the court rendered the following judgment:
“It is hereby ordered, adjudged, and decreed that the rule herein taken by Martin H. Sullivan on June 5, 1907, be made absolute, so far as to order that nine series of premium bonds, more fully described in the supplemental inventory herein, taken by A. Hero,. Jr., notary public, on June 13, 1907, be sold for cash, at public auction, after the usual advertisements, by A. C. Tessier, auctioneer, and that out of the proceeds thereof there be paid to mover the amount of the demand note held by him, to wit, the sum of $25,291.67, with interest at 6 per cent, per annum from June 5, 1906, until paid, subject, however, to credit of $5,490, proceeds of one series of premium bonds collected by mover, to be imputed according to law as of the date when same was received.
“It is further ordered, adjudged, and decreed that in all other respects said rule be discharged, with recognition, however, of mover’s right to demand and receive of this succession the purchase price of certain securities sold by him to the deceased, as per three several contracts made by the deceased on June 5, 1906, to wit, the sum of $137,715, with legal interest from June 5, 1906, to November 15, 1906; subject, however, to a credit for all dividends received upon such securities between said date, to be imputed according to law, and subject to a further credit equal to the market value of said securities on November 15, 1906, being the prices offered therefor according to the quotations of the New Orleans Stock Exchange on said day.
“It is further ordered, adjudged, and decreed that up to the amount of his claim mover’s right of pledge upon the proceeds of the bonds herein ordered to be sold be recognized for any excess over the sum necessary to liquidate the demand note hereinabove mentioned.
“It is further ordered, adjudged and decreed that in the alternative, and at mover’s option, his right be recognized to declare the time contracts herein declared upon annulled, and to retain the securities therein mentioned, together with all dividends received thereon, for his own account, and thereupon both parties thereto’ shall be mutually discharged from any liability thereunder.
“It is further ordered that the costs hereof be-borne by the succession.”
Judgment read and rendered in open court June 27, 1907. Judgment signed in open court November 25, 1907.
In his reasons for judgment the district judge said:
“The agreement between mover and the deceased evidences a complete contract of sale, by which, from the moment of its execution, the deceased became the owner of the securities therein mentioned and was entitled to the dividends-thereon accruing, whilst in turn he owed the-agreed price. All the essentials of a complete' contract were there — the contract; the thing; the price. Interest seems to be an essential part of the price in a contract which is to be completed at some future time (Kaplan v. Whitworth, 116 La. 337, 40 South. 723), if the parties have expressly left open the rate of interest to be agreed upon at some future time, and the contract relates to real estate, though it is not quite clear to me why the whole contract under such circumstances should be considered utterly void, since promisee seems at least to have privilege of paying, cash, thus making any agreement as to the interest totally unnecessary (Civ. Code 1838, art. 2053).
“But where the contract is completed the situation is entirely different. If the price be agreed upon, but the parties have not agreed upon the interest which the unpaid portion is-to bear, the law itself provides in what case interest shall be due (Civ. Code 1838, art. 2053), and this is one of them, for the securities produced a revenue. And where the parties have agreed that there shall be interest, but have not agreed as to the rate, the law fixes it at 5 per cent. (In re Immanuel Presbyterian Church, 112 La. 362, 36 South. 408; also Hughes v. Mattes, 104 La. 231, 28 South. 1009), as made clear in Goss Printing Co. v. Daily States, 109 La. 763, 33 South. 760.
“There is also this further consideration, which distinguishes this case from the Kaplan Case, that, even if the interest forms part of the price, parol proof thereof is admissible where the contract relates to movables, for there is in that case no prohibition against proving *73 by parol tbe price agreed upon, since the prohibition against proving interest by parol applies only where interest is claimed as such, and has no application where it figures only incidentally as part of the price of something, unless that something be real estate, as was the case in Kaplan v. Whitworth, above cited. In this case the testimony shows that a rate of interest had been agreed upon in excess of that which I have allowed.
“I am therefore of opinion that the contracts •herein .declared upon were valid and binding obligations of the deceased. On the other hand, deceased defaulted thereon early in November, and mover should then have proceeded to liquidate his claim against him. Having failed to do so, he must be taken to have carried the securities for his own account from that time on. Vance v. Tourne, 13 La. 228.”
Martin H. Sullivan has appealed from this judgment.
Mrs. Rosemonde Kuntz moves in this court that the judgment appealed from should be amended by striking out all that portion commencing with the words, “with recognition, however, of mover’s right to demand and receive,” etc.; that is to say, commencing in ■the beginning of the second line of the third paragraph of said judgment, down to and including the whole of the fourth and fifth paragraphs of said judgment and decree, and ■save and except as herein suggested the judgment should be affirmed, with costs.
Counsel for Martin H. Sullivan, appellant, in their brief urge that judgment should be rendered by this court annulling, avoiding, and reversing the judgment appealed from, and that it render judgment in favor of the appellant, adjudging and decreeing that appellant have judgment against and recover from the succession of Philip Felix Herwig in the sum of $163,006.67, with interest thereon at the rate of 6 per cent, per annum from June 6, 1906, until paid, subject to a credit ■of $5,490, collected by him for one series of bonds, and to further credits for the amounts ■of dividends collected by him upon 220 shares of State National Bank stock and upon 163 shares of Whitney Central National Bank •Stock, and for the amount collected by him ¡upon 163 shares of Germania National Bank liquidators’ signed certificates, said credits to be imputed as of the dates when said moneys were collected; that upon payment of the amount decreed to be due him he transfer to said succession said premium bonds, said bank stocks, and certificates; and further adjudging and decreeing that his right of pledge of said nine series of premium bonds be recognized as securing said bank stock and certificates as well, and that, in case of nonpayment of the amount to be due him, said premium bonds and said bank stocks and certificates be sold at private sale at the New Orleans Stock Exchange, and that the proceeds be applied to his payment, of preference over other creditors of said succession; that the said succession of Herwig pay the costs of these proceedings in the district court and upon appeal, including the costs of printing the transcript.
Referring to the option granted Sullivan in the judgment appealed from, counsel say:
“The decree gave the appellant the right to declare the contracts annulled and to retain the securities. * * * He has exercised the option which the law gave him, and was in this very proceeding seeking to enforce the resulting liability of the succession for the price.
“The court correctly found that the contracts between Sullivan and Herwig were complete contracts of sale, by which from the moment of their execution the deceased became owner of the securities therein mentioned and owed the price.
“It is true the appellant at one time claimed that the sale had been annulled by verbal agreement; but the court held otherwise, at least in effect, when it ordered the premium bonds to be inventoried as property of the succession, subject to the pledge thereof to secure the payment of the note for $25,291.67, and to secure the execution of the demand contracts for the sale of the contracts. As the transaction embracing the bonds and the stocks was an entire one, it could not be held valid as to a part and not valid as to another part.
“Mr. Sullivan accepted this judgment of the court, and did not appeal from it; nor did any one else. Thereupon he proceeded by rule, to which his coexecutor and all the heirs and legatees were made parties, to enforce the execution of the contracts in default of payment of his demands. This was the only course left open to him. No objection was made to his proceeding by rule, instead of by direct action.
“As late as October, 1907, when his motion *75 for a new trial was filed, Sullivan was still willing that the stocks and bonds should be adjudged to him, and the $25,000 note canceled.
“Soon afterwards came the panic, the failure of the State National Bank, its stock being now practically valueless, and the depreciation of the Whitney Central Bank stock, nearly $100 per share.
“Small wonder that opponent now asks the reversal of the judgment, which she sought and obtained when values had been only slightly impaired. But Mr. Sullivan is not now willing to have the stock thrust upon him, after such shrinkage of values, but stands upon the ground where the court placed him, and asserts his right as pledgee to have his contracts and pledge enforced.”
Should the prayer of Mrs. Rosemonde Kuntz be granted, the judgment of the court as amended on her prayer would read:
“It is hereby ordered, adjudged, and decreed that the rule herein taken by Martin H. Sullivan on June 5, 1907, be made absolute so far as to order that nine series of premium bonds, more fully described in the supplemental inventory herein, taken by A. Hero, Jr., notary public, on June 13, 1907, be sold for cash at public- auction after the usual advertisements by C. A. Tessier, auctioneer, and that out of the proceeds thereof there be paid to mover the amount of the demand note held by him, to wit, the sum of $25,291.07, with interest at 6 per cent, per annum from June 6, 1906, until paid, subject, however, to credit of $5,490, proceeds of one series of premium bonds collected by mover, to be imputed, according to law, as of the date when same was received. It is further ordered, adjudged,_ and decreed that in all other respects said rule be discharged. When so altered and amended, Mrs. Kuntz prays that the judgment appealed from be affirmed.”
After the judgment appealed from had been rendered, Tessier, the auctioneer, who was directed to make the sale of the bonds, obtained a rule from the court on Sullivan to compel him to deliver to him the physical possession of the premium bonds which were so ordered to be sold, or place the same subject to his order, so that he might deliver the same to the purchaser. Sullivan resisted the right of Tessier to interfere or intermeddle in the affairs of the succession; that he was a stranger to the succession, being neither heir, legatee, nor creditor, and no party to the judgment which had been rendered; that the judgment referred to was then on appeal to the Supreme Court; that the bonds were in his own physical possession in pledge for a debt due to him, and they could not be taken out of his possession unless the debt due him had been discharged and extinguished by payment. The court made Tessier’s rule absolute, and Sullivan has appealed suspensively from the' judgment.
We are satisfied, under the evidence, that on the 5th or 6th day of June, 1900, P. P. Herwig sold and delivered to the appellant 10 series of premium bonds, together with 440 shares of the capital stock of the State National Bank, 325 shares of the capital stock of the Whitney Central National Bank, and 325 shares of the liquidators’ certificates of the Germania National Bank, for the lump price of $300,416.67. Sullivan paid' Herwig for them. That fact was conceded by the counsel for Mrs. Kuntz when this case was being argued. The contest between the parties is as to what followed after. We are satisfied that, after the sale just referred to had been consummated, Herwig a few days thereafter repurchased the 10' series of premium bonds, which he had just before sold to him, together with 220 shares of the State National Bank, 163 shares of the Whitney Central National Bank, and 163 shares of the Germania National Bank liquidators’ certificates.
The instruments evidencing the sale were in the following form:
“New Orleans, June 5, 1906.
“I have this day sold to Mr. P. E. Herwig 220 shares of the stock of the State National Bank at $400 per share — say $88,000 currency — deliverable on demand at either party’s option, with - interest. Premium bonds as margin on this contract have been deposited with me by - — , either party having the right to call for additional margin in accordance with the rules of the New Orleans Stock Exchange.
“[Signed]' M. H. Sullivan.”
As of the same date P. P. Herwig executed the following instrument:
*77 “New Orleans, June 5, 1906.
“I have this day bought of Mr. M. H. Sullivan 220 shares of the State National Bank at $400 per share — say $88,000 currency — deliverable on demand at either party’s option, with - interest. Premium bonds as margin on this contract has been deposited with me by -, either party having the right to call for additional margin in accordance with the rules of the New Orleans Stock Exchange.
“[Signed] P. F. Herwig.”
A writing identical in form with the above was signed by M. H. Sullivan, on the 5th of June, 1906, with reference to a sale made by him that day of 163 shares of the Whitney Central National Bank at $280 per share— say $45,640 currency — and a writing, also identical in form with the same, was signed by M. -H. Sullivan on the 5th of June, 1906, with reference to a sale made by him on that day of 163 shares of the Germania National Bank liquidators’ certificates at $25 per share — say $4,075 currency.
On the same day P. F. Herwig signed with reference to the purchase by him on that day of 163 shares of the Whitney Central National Bank at $280 per share (say $45,640 in currency), with interest, and the purchase by him of 163 shares of the Germania National Bank liquidators’ certificates at $25 per share (say $4,075 currency), with - in-
terest, two instruments identical in form with that which he had signed with reference to the purchase by him of the 220 shares of stock of the State National Bank.
On the same day Herwig executed a promissory note to the order of M. H. Sullivan for $25,291.67, with interest at- per cent. per annum from June 5, 1906. The note contained on its face, over the signature of Herwig, the following printed form of pledge memorandum :
“This note is secured by pledge of the securities mentioned on the reverse hereof, and in case of its nonpayment, or should the drawer hereof, when called on, refuse or fail to keep the margin herein good, the holder is hereby authorized to sell the said securities at public or private sale, without recourse to legal proceedings, and to make any transfers that may be required, applying proceeds of sale towards payment of said note.”
The indorsement of the note was as follows:
“Secured by $20,000 premium bonds, which are also pledged to secure my three contracts of this date with Mr. M. H. Sullivan, for State National Bank stock, Whitney Central National Bank stock, and Germania National Bank liquidators’ certificates.
“[Signed] P. F. Herwig.”
The stocks purchased were not themselves pledged.
There is some discussion as to whether the agreements between Herwig and Sullivan in relation to the repurchase by the former of one-half of the stocks and bonds evidence a present completed purchase of the same, the date of delivery and time of payment being only left open, or whether they were agreements to thereafter purchase and thereafter sell the instruments referred to. We do not think. the decision of that question of importance in this case; for, whatever they were, they were canceled and set aside by agreement.
The difficulty in this case results from the shifting of the position of the appellant In respect to his own legal rights and the legal obligations of Herwig. It is beyond question true that in the lower court he earnestly contended that in November, 1906, the purchase of bonds and stocks which Herwig had made from him in June of that year was set aside and canceled by consent, and that this cancellation extinguished all of Herwig’s obligations resulting therefrom, and at the same time all the rights in the property which he had previously acquired. He not only stated that fact in his pleadings in the rule taken to have the premium bonds placed on the inventory as the property of the succession, but he testified several times to the same effect and sought to have that fact recognized. Mrs. Rosemonde Kuntz succeeded, however, in having that situation of *79 affairs denied, and in spite of all he could do to the contrary the court ordered the premium bonds to be placed on the inventory of the. succession, subject to his rights as a creditor.
Sullivan thereafter abandoned the position which he had before taken, and to which he had sworn, and presently places himself before the court as entitled to the personal judgment which he now prays for. He does this upon the theory that the order of the court which Mrs. Iiuntz had obtained had the force of res judicata, and which forced' him, not as a matter of choice, but of necessity, to take his present position. That order was obtained on a rule obtained by one of three legal heirs of Herwig in a testate succession then under administration in the hands of two executors against Sullivan personally. The succession was not a party to that rule, nor were the two other heirs. The order given by the judge to Sullivan to place the bonds on the inventory did not evidence a judgment against the succession or bind the coheirs of Mrs. Kuntz. It was not a final judgment, but a mere provisional order, in no wise adjudicating upon the rights of the parties, and carrying with it no further or greater effect than the fact itself of being so inventoried, leaving the actual existing rights and obligations of all parties open for actual investigation and adjudication.
If Sullivan looked upon it as a judgment having the force and effect he now urges it had, it was within his power to have protected himself from its effect by immediately appealing from it. Had he done so, he could and would have suffered no injury therefrom. If he has suffered any loss in the premises by acting in respect to the bonds and stocks, not as belonging to himself, with the right to sell the same in manner and form and at the time he might elect, but as belonging by reason of the order of the court to the succession of Herwig, it has resulted from a mistake on his part as to the legal situation, from the effect of which mistake we cannot relieve him when legal principles have to be applied to matters as they actually stand. Were we to render the personal judgment in his favor which he prayed for, it would he one which would throw the loss which he asserts has resulted from not disposing of or selling the bonds and stocks in November, but holding onto them up to the present time, upon the two coheirs of Mrs. Kuntz, who have not contributed in any way to the result, and upon the succession, which was not a party to the proceedings which led up to the result.
This we would not be justified in doing under the evidence in this case. We cannot possibly hold the succession and the heirs of the succession liable upon instruments which Sullivan, even at the present time, concedes were canceled. and set aside in November, 1906, nor force upon the succession the ownership of bonds and stocks which do not belong to it — in point of fact, ceased to belong to Herwig, if they ever did, after he had sold them to Sullivan in the early part of June, 1906. We are forced to hold, and do now hold, that the premium bonds and stocks involved in this suit do not belong to the succession of P. F. Herwig, but do belong to the appellant. We are forced to hold, and do now hold, that the instruments on which appellant bases his right to a judgment do not evidence any debt or obligation due by the succession of Herwig to appellant, but were canceled and set aside in November, 1906. The legal effect of this conclusion which we have reached is to carry with it a reversal of the judgment appealed from, leaving appellant free to act with respect to the premium bonds and the stocks as owners as he may think proper — and we so adjudge and decree.
For the reasons herein assigned, it is here *81 by ordered, adjudged, and decreed that the judgment appealed from bu, and the same is hereby, annulled, avoided, and reversed, with the results hereinbefore declared.