BREAUX, C. J.
Appeal of Martin H. Sullivan, testamentary executor, and Mrs. Rosemond E. Herwig, wife of Emile Kuntz, from judgment signed on the 11th day of April, 1910.
The opponent opposed the account of the executor.
Appellants oppose fee claimed by the attorney of the succession.
The attorney has received on account of this fee $5,000, and this sum is approved in-an annual account duly homologated.
The judge of the district court allowed the attorney in the last judgment from which this appeal has been taken the additional sum of $3,000. The attorney Mr. Girault Farrar, appellee, joined in the appeal and asked for an increase in the amount allowed him as a fee.
The Facts.
In considering the' amount of the claim and the nature and extent of the services *130 rendered, we have examined into the lengthy proceedings in matter of the settlement of the Herwig succession.
We have found that the late Felix Herwig left two sons, issue of his first marriage, and a daughter, Mrs. Kuntz, only issue of his second marriage.
The daughter, appellant, is the only heir interested, as she bought the interests of her two brothers.
Some time after her mother’s death, this daughter instituted suit to compel her father,- Felix Herwig, to account to her to the extent of the community which had existed between her fáther and mother.
The attorney, appellee, rendered services to Felix Herwig in defending this suit.
Shortly thereafter, Herwig died, leaving a will, in which he reduced the shares of his sons and daughter to the legitime — that is, he left them two-thirds of his property — and in this will named Albert 6. Phelps (since deceased) and Martin H. Sullivan his joint universal legatees.
The taking of the inventory of the property of the Herwig succession was attended with many difficulties.
Appellee was in these proceedings the attorney and legal adviser of the executors of the will, Sullivan and Phelps, who were also as just stated, the universal legatees.
The notary began making the inventory.
It had been in progress about two days when the executors objected to appellant’s examination of papers of the succession on the ground that she had antagonistic interests, and that she sought information to assist in prosecuting her suit against her father’s succession for the settlement of the community, and that, thereby, her action, if successful, would greatly reduce the amount of the succession assets in which executors were concerned as universal legatees.
Appellant Mrs. Kuntz applied to the district court for an order compelling the executors to admit her to a participation in the inventory.
A modified order was granted, but not as complete as she desired.
Appellants Mrs. Kuntz and Sullivan, executor, set forth that there were delays in making the inventory; actual postponements and other grounds of complaint which might have been avoided, as she contends.
The appellee and opponent sought to explain the necessity for delay.
Her rule on the executors regarding the necessity of submitting all papers and documents and letters to her inspection was only partially granted. These papers and documents were collected and placed under seal.
On a rule filed by appellant, which was sued for after the inventory had been closed, the judge presiding enlarged further the order previously given. He held that public policy and the interest of impartial justice demanded the exercise of the judicial function with the greatest degree of publicity possible; that all the parties in interest had a right to see and inspect the papers; that, as they had been found in the possession of the deceased himself, no question of personal privilege could arise.
The court ordered the rule to be made absolute and the notary to proceed to complete the inventory of the estate.
The attorney _ here represented the executors in litigating before the court also in matter of the contents of a bank box.
There was a heated contest, which ended in the district court, as no appeal was taken.
There was another legal contest which early succeeded that to which we have just referred. The following briefly explains :
Sullivan executor and universal legatee, was in addition a creditor of the decedent.
Sullivan applied to the court to foreclose his pledge.
Mrs. Kuntz opposed the foreclosure on the ground that the plaintiff in foreclosure had *132 control and physical possession of assets far exceeding in value the amount of the debt claimed by him.
There was evidence taken at some length. The question was very much litigated in the district court.
Sullivan’s first application for a foreclosure was dismissed. No appeal was taken.
He (Sullivan), through opponent as his attorney, instituted other proceedings to foreclose a sale of the stock and bonds, and in this Phelps, the other executor of Herwig, acquiesced.
Opponent withdrew his name as counsel for Sullivan, and in the course of this litigation other counsel appeared.
In this court opponent appeared as counsel for Phelps, one of the executors.
Mrs. Kuntz greatly objected, and there arose a legal controversy of considerable importance, as it assumed a threatening shape that looked as if one would jeopardize the whole estate.
Altogether, nine different opinions were rendered in the district court. The contention at the bar was exceedingly earnest. There were field days in court, pleadings and counter pleadings, charges and answers, and several of the decisions in the lower court are lengthy and manifest marked ability and painstaking care.
The testimony is that costs for filing suits, briefs, stenographers’ fees, and similar expenses amount to over $3,500. Much of the property was sold, compromises made, and agreements. The foregoing amounts were not in connection with the latter, but exclusively in payment of the former.
The decisions of the lower court were all 'brought up on appeal. Three of the number were decided by this court, and the other appeals were dismissed, in accordance with a compromise in which the parties entered after years of litigation.
This fortunate compromise bears date March -, 1909.
In the suit before us for decision, all the transcripts heretofore filed are before us as part of the transcript on the present appeal.
In the case before us, testimony was taken mainly to prove that counsel abandoned the settlement of the succession, and that its legal representatives and parties in interest were compelled thereby to employ another attorney.
The last account filed shows assets for settlement, $130,691.15; disbursements, $85,027.-27; balance, $54,660.88. '
It is stated that there may be a balance due of about $26,000.
This is in litigation.
A claim of the United States government is pending in the federal court against the succession, growing out of some asserted defalcation of a principal on a bond for which decedent was surety to the government of the United States. In other words, a security debt.
Dwelling on opponent’s application of Mrs. Kuntz, the judge presiding, as above stated, still further enlarged the order previously made in regard to her right to inspect all papers and documents, and substantially held that, in the interest of justice, all proceedings should be open to all publicity possible — one party had as much right to inspect the papers as the other.
Although the opponent Mrs. Kuntz finally gained her point, none the less, neither the opponent nor Sullivan nor Phelps, executors and legatees, gained signal success, and neither met with disastrous defeat.
Sullivan had property of the late Felix. Herwig which he held in pledge. He sued to foreclose the pledge. There was considerable litigation about this pledge and the property pledged.
The district court had granted the Sullivan petition. On appeal the judgment was reversed.
We will not detail at length all the facts *134 and- incidents and the law connected with this, the second suit regarding bank stock, pledged to Sullivan. They are related at length in 122 La. 64, 47 South. 398, and 122 La. 82, 47 South. 404, to which we refer those interested in pursuing the subject further.
As relates to this suit, the opponent, Mrs. Kuntz, complains in general terms of counsel, and urges that she should not be forced to pay for services which did not inure to her benefit; that those benefited should pay for them ; that those for whom counsel acted had possession of the property, and sought to serve their personal interests to the prejudice of the true interests of the estate. To come to particulars, That the purpose was to serve Sullivan personally and not Sullivan as executor.
We infer, from statements made in open court at the time that the suit to foreclose the pledge was before us, that owing to an increase in the bank stock values, pledged as before mentioned, settlement was effected on easier terms than would have been possible had there been no delay. During the delay occasioned by the suits, the property pledged rose in value.
This is one of the instances that the law’s delay was beneficial and not ruinous to all parties.
' This opponent further charges that counsel — appellee—terminated his connection with the case immediately after final judgment was rendered in favor of the succession in the lower court. This was also noted above.
In 1907, April, Mrs. Kuntz sought to have consolidated two suits regarding lands in one of the country parishes in which she and the succession of her father were exclusively interested.
This was successfully defended by counsel Farrar, and there was no consolidation; subsequently, there was consolidation ordered in order to try the suit above alluded to with issues growing out Of the settlement of the succession of the late P. F. Herwig.
There was an amended petition filed after the consolidation, whereby this opponent and appellant Mrs. Kuntz sought to compel the executors to file their account and to have determined the extent of the community between Herwig and his second wife, the mother of the plaintiff. She claimed a large amount due her by the community which had existed between her late mother and father.
Another cause for contention grew out' of the fact that in January, 1908, Sullivan and Phelps, in answering the prayer for judgment in reconvention for $150,000, alleged that there were debts of the community just referred to above. They contended that said amount had been paid by Herwig in excess of assets of the community. In other words, a community indebtedness was claimed against Mrs. Kuntz, the heir, to the amount just mentioned. That was also occasion for considerable litigation.
We will mention that, to this point, A. C» and E. G. Q. Herwig, the sons of Felix Her-wig, before referred to, were interested parties and took part in all that was done in court.
From this time on, they do not figure, for, as before mentioned, they sold their interest as heirs to Mrs. Kuntz; she thereby becoming the owner of the estate except that part of the succession bequeathed to Sullivan and Phelps, universal legatees, as above stated.
It follows from this on, in the litigation, the name of Mrs. Kuntz only will be mentioned as opponent and appellant.
She reiterates that the universal legatees, through counsel, now claiming a fee, sought to minimize the last community by bringing claims not chargeable to it; that they thereby sought to increase the assets of the separate estate; that none of the services of *136 attorney were for the benefit of the whole succession, but entirely in the interest of the universal legatees who were testamentary executors.
Services of Counsel.
But to return to the suits, in order to form an idea of the extent of the services of counsel. The consequence of all this litigation was that the settlement of the succession was attended with some difficulty. The records are voluminous, all showing the great industry required on the part of all those Whose duty it was to sift the facts and apply the law, not always easy of application in settlement of community rights in face of opposition.
■Counsel are not in a position to advise with any degree of certainty unless they inform themselves in all that relates to the rights of the respective parties.
The questions involved were all considered and decided in the settlement of the succession of decedent, represented by opponent and appellee as counsel.
In view of the many issues which arose, counsel was entitled to a good fee.
In matter of these services which were connected with the many acts of the decedent, we will state that Felix Herwig was well known in this community for many years. He was a man of large affairs. He enjoyed personal, political, and financial consideration. He at one time owned millions. • At the same time he was indebted for large amounts. His assets were far above his liabilities.
He had many acquaintances — only a few friends.
As is frequently true of men who deal extensively in financial affairs, he had few intimates. Only two — one his confidential clerk for many years, Phelps, the executor of his will, and the other his brother, Joseph Her-wig-, who departed this life a few years bofore the death of Felix Herwig, and from whose succession he (Felix Herwig) received a considerable sum that enabled him to meet annoying debts. These three, Joseph Herwig, Phelps, and decedent, Felix Herwig, were intimate and well informed in regard to the business of the latter, of which not a great deal was known after his and their deaths, rendering the settlement of the estate to some respect more difficult.
In the administration of their affairs, the two brothers Felix and Joseph Herwig were methodical and painstaking. They kept accounts and memoranda of every business transaction.
The return checks and drafts of each were carefully filed away. In settling the estate of Felix Herwig, it became necessary to examine these papers to form an idea of their value as evidence in the course of litigation.
In matter of the fee claimed, facts connected with the succession and .the many accompanying incidents have been considered.
True, the large amount at which the fortune of the deceased had been rated had fallen to the comparatively small amount before mentioned — less than $200,000. The millions had escaped the grasp of the financier. This did not render less difficult the settlement of the succession.
The methodical business man Felix Her-wig was not on friendly terms with his only daughter Mrs. Kuntz. She sued him in 1905, and he answered the suit, not offensively, but coldly said that he owed her nothing.
This answer was written by opponent, and he gave attention to that suit.
He was allowed heretofore $500 for the services rendered by him while Felix Herwig was alive, representing interest adverse to those of Mrs. Kuntz.
By the effect of his will, the universal legatees had interests diametrically opposed to hers.
Shortly after the opening of the decedent’s *138 succession, the conflicting interests hastily sought the protection of the courts. Both pleadings and arguments show the strenuous condition existing in matter of the settlement of the estate.
In the legal combat, the attorney who claims a fee in this litigation, Earrar, represented the two executors and the succession; afterwards he represented one of the executors only.
In the contest waged, one of the executors (who has since departed this life) was dismissed and destituted from his trust for failing to comply with, the law in matter of the settlement of the succession.
In the heat of the contest, there were errors committed; the executors asked for more than they should; they took positions they should have avoided.
Their counsel was also the counsel for the succession.
Only one Attorney Should be Employed.
In answer to the proposition of Mrs. Ivuntz that only one attorney should have been employed, we state:
No question but that only one lawyer should be employed to settle a succession. That view has received the sanction of the courts since many years.
The fact is, in this instance, toward the end of the litigation, the surviving executor, Sullivan, employed another lawyer.
Owing to some real or fancied cause, he chose to seek other counsel than that of the regular counsel employed.
Sullivan’s testimony seeking to justify the employment of other counsel is weak and contradictory. It does not harmonize with the statement of the regular attorney under oath.
We have noted the executor charges that the regular counsel abandoned the estate. In this he is contradicted by counsel before named, and he (the executor, Sullivan) is contradicted by his own acts, for after the asserted abandonment he consulted the regular counsel, Farrar, whom he charged had abandoned the estate. The executor does not maintain his position on this point. His testimony is not at all conclusive.
He said to a witness, who testified in this case, that Girault Farrar was the attorney of the succession, that Mr. Kosen represented the succession of Phelps, and that he (the executor) would do nothing without the advice of regular counsel.
Moreover, a goodly portion of the services had been rendered at the date that other counsel was called in to act for the succession.
Compromise.
The interested parties sought to put an end to the vexatious litigation by a compromise.
True, the complaining counsel was not always moderate, perhaps, in the steps taken in court, iu order to carry out the wishes of the executors; but they were all at cross-purposes to the date that the compromise was signed ending the litigation.
We do not think that it has gone to the extent of rendering it necessary and proper to take from him all of the fee for settling the succession.
We will not follow the argument made in behalf of the heir through all the details and incidents in order to express our own view in regard to the error vel non committed.
We will digress here slightly to state that there is something suggestive in the Biblical injunction: “Do not muzzle the ox that threshed the corn.” There was a time when counsel’s services were quite useful.
We have stated above the opponent, Mrs. Ivuntz, recovered a large amount from the community which existed between her late mother and father.
In order to fix the amounts, it required careful examination and the services of counsel.
*140 It was necessary, contradictorily with, the executors, represented by the attorney Parrar, to separate the separate property of the decedent from that of the community.
A number of pages of .testimony were taken, and nearly all the items were contested, and the final amounts, debits and credits of the community, were finally arrived at after days of work, controversy, and dispute.
Her mother’s estate had not been formally opened; no inventory had been taken; no statement had been made by the father with his daughter, Mrs. Kuntz. This failure to properly administer the succession of the late Felix Herwig must have added greatly to the labor of the attorney in settling the succession of her father.
For a moment, we take up for consideration the asserted adverse services against the succession.
Another complaint of the heir is that suits were improvidently brought or defended by counsel, and some of these suits were adverse to the interest of Mrs. Kuntz.
We are not of the opinion that anything was done in this connection whereby the attorney forfeited his right to a fee.
Objection can be easily found to acts of administration of a succession that has met with losses and whose assets have been reduced in the course of years. They may urge that the property had not been sold for its value; the time for the sale was not favorable.
Property will sometimes lose much of its value.
There may have been error in having offered it for sale at a particular time. It does not follow that the purpose was to favor a particular interest.
There was disappointment, no doubt, by the heir who thought that the estate which had the appearance of being considerable would be large; that such was not the result cannot be charged to counsel, even if he did commit errors in advising and conducting the litigation.
Those who amass large fortunes sometimes pave the way to lawsuits.
In the main, the services were rendered to the estate. They were rendered in great part in open court.
The judge who saw the workman at his work has fixed an amount which seems to us reasonaDIe and just.
We have concluded not to change it — neither to increase nor decrease it.
For reasons assigned, the judgment appealed from is affirmed.